FERNANDO SIERRA BERDECÍA, SECRETARY OF LABOR, ETC. ET AL., Plaintiffs and Appellants, *v.* PUERTO RICO CEREAL EXTRACTS, INC., Defendant and Appellee; BENITO CANTRE ET AL., Plaintiffs and Appellants, *v.* PUERTO RICO CEREAL EXTRACTS, INC., Defendant and Appellee.

No. 12361. Decided August 9, 1961.

260

*Domingo Candelario, Manuel Janer Mendía* for appellants. *José R. Fournier* and *Yamil Galib Frangie* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Some 39 employees of the defendant claim wages pursuant to Mandatory Decree No. 24, approved June 28, 1954 by the Minimum Wage Board of Puerto Rico. The plaintiffs filed two complaints in the Superior Court under Act No. 10 of November 14, 1917 (Sp. Sess. Laws, p. 216), as amended, 32 L.P.R.A. § 3101 *et seq.* The Secretary of Labor appeared in one of the cases on behalf of 36 of those employees.

By agreement of the parties and pursuant to Rule 42 (*b*) of the Rules of Civil Procedure in force at the time the hearing was held, the proceedings in the Superior Court were confined to determining whether or not Mandatory Decree No. 24 was applicable to the defendant.[1]

The trial court held that the decree was not applicable and dismissed the complaints. The complainants-appellants assign the following error: "The trial court erred in holding that the drink known as *malt* is not a *beer without alcohol*, as this term is used in Mandatory Decree No. 24, and that the activities of the defendant, which are confined exclusively to the manufacture of malts, are not covered by the provisions of Mandatory Decree No. 24."

Mandatory Decree No. 24 provides in its § I-A (Definitions) the following: "The 'beer industry' to which this mandatory decree is applied includes, but not by way of limitation, every act, process, operation, and service that may be necessary, incidental, or related to the preparation, production, distribution, advertising, disposal, or sale of any kind of beer with or without alcohol by the manufacturer." 29 R.&R.P.R. § 245n-441.

In § II thereof, on coverage of the decree, it provides in its pertinent part: "This decree covers all work or service necessary or related to the beer industry, as herein defined, including the transportation performed by the employer in his own vehicles and all repair, conservation, or maintenance work done on force account by the employer in buildings, annexes, fixed structures, and other real property used in connection with said industry." 29 R.&R.P.R. § 245n–442.

The issue on the meaning and application of the transcribed provisions having been raised, it is necessary to determine their scope and meaning as well as their intention.

---

[1] Rule 42 (*b*) of the Rules of Civil Procedure of 1943, on separate trials, 32 L.P.R.A., App. The present equivalent rule is Rule 38.2 of the Rules of Civil Procedure of 1958, 32 L.P.R.A. App., Supp.

We shall also determine whether the defendant was aware of that meaning and intent.[2]

The documents which shed more light on this problem are the following two publications of the Department of Labor of Puerto Rico. Both publications form part of the history of Mandatory Decree No. 24. The first is a statistical study entitled "The Beer Industry in Puerto Rico," Labor Department, Minimum Wage Board, September 1953, Exhibit J-8, Minimum Wage Board, Hearing of November 12, 1953. The second publication is the "Findings of Fact, Opinion, and Mandatory Decree No. 24 Applicable to the Beer Industry of Puerto Rico," dated June 28, 1954. This second publication was admitted in evidence without objection by the defendant and was marked "Exhibit I" of the plaintiffs (Tr. Ev. 61–113). The Findings of Fact of the Board are predicated for the most part on the statistical study referred to above.

We have seen that the decree provides that the purpose is to cover "the beer industry" and all work and services related to the production and sale of "any kind of beer, with or without alcohol." Let us see what the Board meant by "beer industry" at the time when it had under study the economic conditions of that industry before and at the time of the approval of Mandatory Decree No. 24. We shall also see whether defendant's interpretation was the same as, or different from, that of the Board, during the whole administrative and quasi-legislative procedure.

According to the Findings of Fact, the Minimum Wage Board decided to review the wages of the beer industry after considering the statistical study of that industry made by its Division of Investigations and Statistics.

In its Findings of Fact the Board concludes that: "In Puerto Rico there are four enterprises engaged in the pro-

---

[2] Since the mandatory decree is quasi-legislative in character, rules of interpretation applicable to statutes should be used in determining its meaning. See 2 Sutherland, Statutory Construction 280, § 4007 (3d ed.), and cases cited therein.

duction of beer. Three are engaged in the production of beer with and without alcohol, while the other is engaged exclusively in the production of *beer without alcohol*, generally known as *malt* and so called throughout the Findings of Fact and Opinion. These four enterprises employ some 900 employees. Of these, some 650 are production employees." (Italics ours.) Further on, in the same Findings of Fact, the Board again employs the following language: "The employees in the manufacture of *beer without alcohol*, generally known as *malt*...." (Tr. Ev. 77.) (Italics ours.) We quote further from the Findings of Fact: "The statistical study (Exhibit J-8) prepared by the economists of the Board contains the result of the operations for 1952 and the balance sheet at the end of the year of the four enterprises engaged in Puerto Rico in the manufacture of beer with and without alcohol."

"Tables Nos. 3 and 4 show a Statement of Profit and Loss and a Statement of the Cost of Sales for the production of beer with alcohol, malt, and both products combined. As stated before, three of the four beer enterprises which operate in the Island manufacture beer with alcohol and malt. The other enterprise manufactures malt only (Tr. Ev. 86).

"During 1952, the four enterprises which were under study received income totalling $17,055,577, the cost of the sales being $11,311,962. The gross profit was $5,743,615. From these gross profits there are deducted the overhead sales and administration expenses amounting to $3,052,522, leaving a profit from operations of $2,691,093. This operation profit is equivalent to 15.8 per cent of the sales and to 37.8 per cent of the capital and accumulated surplus . . . (Tr. Ev. 87.)

After summing up the lengthy statistical study in its Findings of Fact, the Board concludes that, "In view of the foregoing considerations, we believe that the financial condition of the beer industry in Puerto Rico has sufficient

margin to increase the wages which it pays to its workers" (Tr. Ev. 91).

We need not reproduce here any more language or data contained in the Findings of Fact in order to show that the Board at all times considered and had in mind the four companies engaged in the production of beer with alcohol and beer without alcohol, generally known in Puerto Rico as malt. Those four enterprises constituted at that time the beer industry of Puerto Rico. The findings of fact made by the Board, while acting within its powers, shall, in the absence of fraud, be conclusive. 29 L.P.R.A. § 235; *Sunland Biscuit Co., Inc.* v. *Minimum Wage Board*, 68 P.R.R. 345 (1948); 29 L.P.R.A. § 246a, Supp.

Which were those four beer enterprises to which reference is constantly made in the Findings of Fact of the Board? It is stated in the Findings of Fact that the proposed mandatory decree was published in the newspapers on December 3, 1953, and notice was thereby given that a period of 15 days was granted to formulate in writing objections to the proposed decree. Within the term granted "the four beer enterprises of Puerto Rico filed jointly" a memorandum of objections to the proposed decree. (Tr. Ev. 69.) That memorandum is entitled "Objections to Proposed Mandatory Decree No. 24 Referring to the Beer Industry in Puerto Rico," dated December 15, 1953, in which there appear *Cervecería India, Inc., Cervecería Real, Inc., Corona Brewing Corp.*, and the defendant herein *P.R. Cereal Extracts, Inc.* That memorandum is signed by the attorneys of the four enterprises in question and also, under oath, by the four principal executives of those four companies. In the oath they state that they have read the preceding memorandum of objections and that the allegations therein contained are true. (Exhibit 3 of the complainants, Tr. Ev. 113.) It is further stated in the Findings of Fact: "The hearing having terminated...the employers and workers requested terms to file memoranda setting forth their objections and

amendments to the proposed decree in the light of the evidence offered at the hearing.... The attorneys of *the four beer enterprises* filed a memorandum, and the attorney for one of the labor organizations also filed one." (Tr. Ev. 70.) (Italics ours.)

In the memorandum of December 15, 1953, reference is constantly made to "the beer industry," "the industry," and "the native beer industry." Furthermore, recommendations are made therein to the amendment of the definition of beer industry given in the proposed decree, and nowhere mention is made of excluding the defendant from the decree. The objections to the proposed decree made in that memorandum deal with the (1) amendments to the definition of the beer industry (on irrelevant aspects of the problem under consideration), (2) the minimum wage rate, (3) the guaranty of minimum weekly compensation, and (4) other working conditions.

 There is no doubt that the defendant was one of the four beer companies which intervened in the entire proceeding which culminated in the drafting of Mandatory Decree No. 24. It is also clear that the defendant appeared and acted in its capacity of one of the four enterprises in Puerto Rico engaged in the production of beer with and without alcohol, as these terms were used in the entire administrative proceeding and in the Mandatory Decree. The defendant's interpretation was the same as that of the Board in the sense that malt was covered by the term "beer without alcohol." [3]

---

[3] It is not necessary for the solution of this case, but if it had been we would have probably taken judicial notice of the "Memorandum Summing Up the Objections to Proposed Mandatory Decree No. 24, Referring to the Beer Industry in Puerto Rico," of February 17, 1954, which was submitted to the Minimum Wage Board by the four companies, including the defendant, and of the letter from the defendant to the Board submitting candidates for special members of the Board, because these documents are capable of instant and unquestionable demonstration. McCormick, Evidence 691, 710, 712, § § 325, 330, 331 (West Publishing Co., 1954); 9 Wigmore, Evidence 548, § 2571 (3d ed., 1940). Pursuant to the

Having determined the intention of the Board in issuing the decree (in the sense that it would cover the production of malt), and having clarified also that the four companies, including the defendant, were also of the same opinion, there is one other point to be considered. The expert chemist testified at the trial that malt is not a beer. (Tr. Ev. 56.) From the context of his testimony it appears that the expert testified within the meaning and limitations of a technical definition. The defendant assumed the position at the trial that since the decree refers to "beer of any kind, with or without alcohol" and since malt is not a beer, the decree did not, therefore, apply to it because it produces malt only. To adopt that view, we would have to disregard everything previously said and would also have to adopt a philosophy on the construction of statutes and regulations which we are not inclined to follow. In the first place, having determined the intent of the Board which formulated the decree, it is our duty to interpret it in such a way as to achieve its objective.[4] That determination is strengthened by the fact that we are convinced that the defendant was aware of that intent and shared that interpretation during the administrative and quasi-legislative proceeding which gave rise to the decree in question. In the second place, we wish to point out that the Board which issued the decree was not composed of technical chemists but of five citizens of different vocations,

law in force at the time Mandatory Decree No. 24 was issued, once the Board decided to fix or review salaries in an industry, it would request, through notice in the newspapers, the employers and the laborers of such industry (beer industry in this case) to submit candidates for two special members of the Board. One member would be the representative of the employers and the other of the laborers. The defendant's letter submitting candidates clearly indicates that it considered itself a beer enterprise. The defendant did not produce beer with alcohol but beer without alcohol, generally known as malt. In the memorandum of February 17, 1954, the defendant clearly and repeatedly, jointly with the other three companies, took the stand that it was one of the beer enterprises which would be affected by the decree under consideration before the Board.

[4] Sutherland, op. cit., ibid.

and that it would therefore be unreal to pretend that they used the words of the definition in a technical sense and not in their general and popular use.[5] (Civil Code, § 15, 31 L.P.R.A. § 15.)

■■ It is not necessary to repeat here an exegesis of the rules of construction of statutes and regulations. It will suffice to point out that the laws and the regulations have a purpose and constitute the public policy formulated by the legislative and quasi-legislative bodies of the State. In *Vivaldi* v. *Mariani et al.*, 10 P.R.R. 420, 422 (1906), this Court said that "The legislative intent in the enactment of a statute should be constantly kept in view in construing it, and it should not be defeated by a too strict adherence to the mere words used . . . ," and in *People* v. *Ramos*, 18 P.R.R. 954, 964 (1912), we said that the fundamental rule of interpretation, to which all others are subordinate, is that such a law is to be expounded according to the intent of those that made it (Civil Code, § 19, 31 L.P.R.A. § 19). More recently, in *Calaf* v. *Sec. of the Treasury*, 76 P.R.R. 540, 546 (1954), we said that the manifest legislative intent should prevail over the literal provision of the statute which may be in conflict with that intention. "Although statutory construction is an art and not a science and no theory ever furnishes an infallible remedy for establishing the correct and accurate meaning of the law, it is nonetheless true that . . . the most outstanding and fundamental resort of the rational interpretation is the teleological element derived

---

[5] The Board which issued Mandatory Decree No. 24 was composed as follows: Frank Zorrilla, its chairman and representative of the public interest; Jesús M. Benítez and Antonio Escudero, Jr., representatives of the employers; and Lorenzo Fernández and Danilo Valle, representatives of the laborers. Zorrilla, Benítez, and Fernández were the permanent members of the Board, and Escudero and Valle were the special members and both belonged to the beer industry: Escudero for the employers and Valle for the laborers. The Board which issued the decree was constituted under the authority of the Minimum Wage Act then in force, Act No. 8 of April 5, 1941 (Sess. Laws, p. 302; 29 L.P.R.A. § 211 *et seq.*). The present law on the matter is Act No. 96 of June 26, 1956 (Sess. Laws, p. 622; 29 L.P.R.A. § 245 *et seq.*).

from the purpose of the law . . . since the latter . . . is always a means to an end and, consequently, it should be construed . . . attributing to it the sense that best achieves the end sought by it." *Borinquen Furniture* v. *Dist. Court; Umpierre, Int.,* 78 P.R.R. 858, 861 (1956), and authorities cited therein.

The case law has outgrown its primitive stage of formalism when the precise word was the talisman, and every slip was fatal. *Wood* v. *Duff-Gordon,* 222 N.Y. 88, 91; 118 N.E. 214 (1917); Cardozo, "The Nature of the Judicial Process" 100 (1939).

For the reasons stated above, the judgment appealed from will be reversed and the case remanded to the Superior Court for further proceedings not inconsistent with this opinion.